The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the Plaintiff and the Defendant-Employer.
3. The Defendant-Employer was self-insured with Alexsis, Inc., as the servicing agent.
4. Plaintiff's average weekly wage as set forth on the Form 22 is $225.00, which yields a weekly compensation rate of 150.00.
5. Plaintiff is alleging an injury by accident that occurred on or about December 17, 1992, resulting in an injury to her back.
6. The Defendant employer has denied that Plaintiff suffered an injury as a result of the accident.
7. Plaintiff is seeking temporary total disability benefits from December 17, 1992, through December 22, 1992, from September 10, 1993, through January 3, 1994, and ongoing from April 20, 1994.
8. The issue to be determined by the Commission is whether Plaintiff in fact suffered an injury as a result of the accident that occurred on December 17, 1992.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was forty-four years old and began working at Aratex Services, a uniform rental business, in May 1992. Her position at the company was that of a hanger, which involved obtaining uniforms from a bin, placing them on hangers and then in turn placing the hangers on a rack.
2. On December 17, 1992, a co-worker in front of Plaintiff knocked a rack of empty hangers into her, causing her to fall backwards. Plaintiff was caught by co-worker Wanda Brewer, and therefore, never actually fell to the floor.
3. On the date of the incident, Plaintiff was seen at Guilford College Family Practice Associates with complaints of low back pain. The neurological exam to test for signs of disk involvement was completely normal. Specifically, the Plaintiff had full range motion, could squat without difficulty, had a negative straight leg raising test, and normal deep tendon reflexes. Plaintiff was given medication and taken out of work for the weekend. She was specifically told that she should contact the doctor's office if she experienced any worsening of symptoms. Even with this instruction to return if necessary, the Plaintiff sought no further treatment for nine months, during which time she continued to work her normal job at Aratex.
4. From December 21, 1992 through September 13, 1993, the Plaintiff continued her work at Aratex, without any restrictions. Plaintiff never requested further treatment even though her initial visit in December 1992 was paid for by the employer. Plaintiff performed her normal job duties with only occasional complaints during these nine months. However, prior to December 17, 1992, the Plaintiff had also occasionally complained of back pain.
5. On September 13, 1993, the Plaintiff returned to Guilford College Family Practice and was treated by Dr. Leonard Nyland. Plaintiff reported to Dr. Nyland that she had generally gotten better since the December 1992 incident, but approximately two and one-half weeks prior to seeing him noticed a distinct increase in pain and change in symptoms, including radiation of pain into her leg. During this September 1993 visit the Plaintiff had neurological findings to suggest possible disk involvement. It was not until nine months after the accident that any neurological tests performed on the Plaintiff were positive. An MRI taken in September 1993 revealed a small disk herniation at the L5-S1 level. Dr. Nyland then referred the Plaintiff to Dr. Philip Deaton, a neurosurgeon.
6. Dr. Deaton first saw the Plaintiff on September 29, 1993 when the Plaintiff again reported a distinct change in symptoms and increased pain in September, 1993. The tests completed by Dr. Deaton were indicative of disk involvement. Dr. Deaton treated the Plaintiff conservatively from September 1993 through December 2, 1993. During this conservative treatment of exercise and medication, the Plaintiff's pain and symptoms decreased, and by December 2, 1993 she had improved substantially. At that point, the physician noted that surgical intervention would not be necessary and told Plaintiff to return to work in two to three weeks. Plaintiff returned to ARATEX on January 3, 1994.
7. Aratex provided Plaintiff a position in January 1994 sorting and folding uniforms. Again, the Plaintiff occasionally complained of back pain, just as she did before the accident, but was able to do her job duties.
8. After working for four months, on April 28, 1994, Plaintiff again returned to Dr. Deaton complaining of different symptoms and a change in her clinical condition. She related to the physician that the new symptoms were "secondary to her job" but no specific incident which caused these changed symptoms in April 1994 was ever reported to either the physician or anyone at Aratex. Dr. Deaton recommend that plaintiff stay out of work for the remainder of the month.
9. After a brief course of conservative treatment, Dr. Deaton sought a second opinion evaluation from neurosurgeon, Dr. Ernesto Botero, in June 1994. Dr. Botero concurred with Dr. Deaton's recommendation that conservative treatment continue and further suggested that epidural injections be attempted. While Plaintiff improved slightly due to conservative treatment, by November 1994 Dr. Deaton decided to move forward with surgery. Thus, on November 30, 1994, the plaintiff underwent a hemilaminectomy and microdiskectomy. At the time of Dr. Deaton's deposition, the Plaintiff was recovering well from surgery although she had not reached maximum improvement and had not yet been rated. Plaintiff has not worked since taking the medical leave on April 20, 1994.
10. As to the issue of causation, given the great length of time between the accident and subsequent treatment for a disk herniation, neither Dr. Nyland nor Dr. Deaton could give an opinion regarding causation with any degree of certainty. Plaintiff's evidence of causation is speculative; furthermore, plaintiff has failed to prove by the greater weight of the evidence that the condition of which she complains is causally related to the December 17, 1992 incident.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. It is fundamental that under the Workers' Compensation Act in order to receive any benefits, a claimant must establish that her disability was caused by an injury by accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Plaintiff carries the burden of proving each and every aspect of her claim by a preponderance of, or greater weight of, the evidence.A. Larson, The Law of Workmen's Compensation, § 80.33 (a) (1989). A critical element which the Plaintiff must prove is a causal relationship between the injury and her employment.Bartlett v. Duke University. 284 N.C. 230, 200 S.E.2d 193 (1973) which stands for the proposition that no recovery is available for an injury which cannot fairly be traced to the employment as a contributing proximate cause.
2. The evidence presented to establish causation must rise above the level of speculation. For example, in Gilmore v. HokeCounty Board of Education, 222 N.C. 358, 23 S.E.2d 292 (1942), the employee fell, broke his leg, and died some seven months later from arteriosclerosis, mild carditis and multiple arthritis. There was medical testimony to the effect that the employee's forced inactivity necessitated by the compensable leg injury was the contributing factor in his subsequent death. However, the court, in reversing an award of compensation:
 From these provisions the legislative intent is clear that, under the North Carolina Workers' Compensation Act, the employer shall pay compensation for death of an employee only when the death results proximately from the injury by accident arising out of and in the course of the employment. The injury by accident must be the proximate cause, without which death would have occurred. And to establish a real relationship of cause and effect between an injury to, and subsequent death of an employee, the evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, tending to show a proximate causal relationship between the injury and subsequent death.
Id. at 365-66, 23 S.E.2d at 296 (emphasis added).
3. In order to meet the substantial burden of showing a proximate causal relationship, Plaintiff must present medical evidence based upon a reasonable medical certainty. Click v.Pilot Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980). InClick, our Supreme Court held that the Industrial Commission erred in awarding compensation to a plaintiff for a herniated disk in the absence of expert testimony establishing a causal relationship between the alleged accident at work and the injury. The Click decision highlighted the complexity of disk injuries, and in turn the importance of requiring a plaintiff to provide competent opinion evidence as to the cause of the herniated disk.Id. at 167, 265 S.E.2d at 391. Given the difficulty in pinpointing the cause of disk injuries, as acknowledged by the Supreme Court in Click, it is of the utmost importance to require a claimant to present solid medical opinion testimony that rises above speculation or possibility. See Ballenger v. BurrisIndustries, 66 N.C. App. 556, 311 S.E.2d 881. In the instant case, both the facts before the Commission as well as the speculative opinion testimony lead to the conclusion that Plaintiff has failed to provide competent medical evidence causally relating the herniated disk to the alleged accident nine months earlier.
Based on the foregoing findings of fact and conclusions of law, the undersigned enters the following
ORDER
1. Plaintiff's claim for worker's compensation benefits for her herniated disk is hereby DENIED.
2. Each side shall pay its own cost, except Defendants shall pay an expert witness fee, if not already paid, in the amount of $225.00 to Dr. Nyland.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _________________________ COY M. VANCE COMMISSIONER